## In re CENTRAL STATES ELECTRIC CORP. (two cases).

### Petition of HENIS et al.

### Petition of O'BRIEN.

### Nos. 6616, 6621.

United States Court of Appeals Fourth Circuit.

Argued June 3, 1953.

Decided July 16, 1953.

No. 6616:

Ralph Montgomery Arkush, New York City, for petitioners.

Thomas C. Egan, Philadelphia, Pa. David J. Mays, Richmond, Va., and Thomas F. Boyle, New York City (Harry R. Axel-

roth, Philadelphia, Pa., Francis E. Walter, Easton, Pa., Tucker, Mays, Cabell & Moore, Richmond, Va., Boyle, Feller, Stone & McGivern, and James P. Reeves, New York City, on the brief), for respondents.

No. 6621:

Cornelius C. O'Brien, Philadelphia, Pa. (Francis J. Myers, Philadelphia, Pa., and Allen, Allen, Allen & Allen, Richmond, Va., on the brief), for petitioner.

No appearance for respondents.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

### PER CURIAM.

These are petitions for leave to appeal from an order of the court below making allowances to counsel and committees in the bankruptcy reorganization proceedings of the Central States Electric Corporation. In No. 6616 the leave to appeal is asked by certain holders of participation certificates issued under the plan to the 7% preferred stockholders. They seek to challenge on appeal the very substantial allowance made to the attorneys for the committee of the 7% preferred stockholders and the comparatively small allowances made to counsel of the 6% preferred stockholders committee and to the members, secretary and counsel of the Kelly and Doyle committees representing common stockholders. In No. 6621 leave to appeal is asked by Joseph L. O'Brien, one of the members of the 7% stockholders committee from that portion of the order of the lower court which denies his petition for compensation.

### No. 6616.

Under the plan of reorganization the 7% preferred stockholders were paid approximately $198 per share and were issued participation certificates or "stubs" giving the holders the right to participate in certain residual assets. Petitioners hold only 2,011 of these "stubs", as against 68,880 outstanding, and all except 180 of these were acquired long after the plan of reorganization had become effective. As these petitioners are the holders of a comparatively insignificant interest in tag end

assets and as the greater part of even this interest was acquired after the order of which they complain and represents nothing more than buying into a lawsuit, they have little equitable standing to challenge that order. Particularly is this true where the challenge relates principally to the allowance made counsel for the 7% preferred stockholders, in whose shoes the stub holders must stand, who profited greatly from the services of counsel and who voiced no opposition to the allowance when it was made. See In re Commonwealth & Southern Corporation, 3 Cir., 186 F.2d 708, 712; Cf. Ortion v. Austrian, 4 Cir., 166 F.2d 939. We need not go into this, however, since we think petitioners have no legal standing to appeal. They did not appear in the court below and ask relief nor were they personally made parties in any other way. All of the 7% preferred stockholders were represented by a committee and by the trustees. If not satisfied with this representation, petitioners should have intervened in the proceedings below and objected to the order which was entered. Not having done so, they may not appeal from an order in a proceeding to which they did not make themselves parties. To permit such appeals would result in endless confusion. In re Van Sweringen Corporation, 6 Cir., 180 F.2d 119. See also Payne v. Niles, 20 How. 219, 61 U.S. 219, 15 L.Ed. 895; United States v. Seigel, 83 U.S.App.D.C. 88, 168 F.2d 143.

### No. 6621.

Joseph L. O'Brien asked an allowance of compensation for services which he had rendered in the organization and work of the 7% preferred stockholders committee. Sec. 249 of the Bankruptcy Act, 11 U.S.C.A. § 649 provides that no compensation or reimbursement shall be made to "any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity" who at any time after assuming to act in such capacity has purchased or sold claims against or stock of the corporation being reorganized. It appears that O'Brien was a member of a firm which had owned 10,544 shares of the 7% preferred stock and which

prior to his organization of the committee had sold all of this stock to members of the firm, 1,000 shares being sold to O'Brien's wife. 200 of these 1,000 shares were given to O'Brien's sister and employees of the firm, and later, after the organization of the committee, the remaining 800 shares were sold by the wife at a profit of $118,000. It appears, also, that the firm of which O'Brien was a member traded in stock of American Cities and Blue Ridge Corporation, subsidiaries of Central States, during the reorganization proceeding. We agree with the court below that the making of an allowance to O'Brien was precluded by the sale of stock by his wife. In re Midland United Co., D.C., 64 F.Supp. 399, 416, affirmed 3 Cir., 159 F.2d 340, 347; In re Inland Gas Corp., D.C., 73 F.Supp. 785, 791–792. And we do not think that his position is helped by the contention that the sale was to a purchaser who was acquiring that stock along with other shares in connection with a plan to have the reorganization proceedings dismissed, or that the sale, not disclosed till long after the event, was motivated by O'Brien's conception of what was best in reorganization strategy.

 Although the District Judge did not base the denial of compensation to O'Brien on the trading by his firm in the stock of the subsidiaries, we agree with the statement in the memorandum filed in the court below in behalf of the Securities and Exchange Commission that this was ground for denial. See In re Midland United Co., supra. Trading by the firm was, of course, sufficient basis for denying compensation to a member. In re Mountain States Power Co., 3 Cir., 118 F.2d 405; In re Reynolds Investing Co., 3 Cir., 130 F.2d 60. And, while the relationship between a corporation and its subsidiaries may in some cases not always be so close as to bring trading in their securities within the inhibition of the statute, we think there can be no question as to its doing so here, where the subsidiaries were so clearly part and parcel of a single enterprise that in approving the plan of reorganization we said of it: Central States Elec. Corp. v. Austrian, 4. Cir., 183 F.2d 879, 884, "What is really accomplished by the plan is not the liquidation of Central, but the replacement of the existing three-tier structure (with the leverage therein inherent) by a new company with a single class of securities, common stock." As was well said in the memorandum filed in behalf of the Securities and Exchange Commission:

"The operations of the subsidiaries, while not intermingled, were supervised by a common board of directors and common officers and a joint staff. The trustees of the Debtor were two of the five directors at all times. The Debtor and its subsidiaries maintained separate corporate existence and had separate accounts and books. However, the system was considered by all the parties as a single family of companies and it was recognized that the Debtor had a preponderant and controlling interest in the two subsidiaries. By reason of leverage, any slight change in the market value of the subsidiaries' holdings was reflected markedly in the asset value of the debtor and the market prices of its outstanding securities. Numerous matters regarding the subsidiaries were brought before the Court and, in fact, the claims for compensation in substantial measure are based upon services in connection with these matters. The 7% Preferred Committee, among others, felt American Cities and Blue Ridge to be so important that they urged representation for themselves on the boards of these companies. They also sought and obtained continuous information regarding portfolio changes in the two subsidiaries."

Both petitions for leave to appeal will be denied.

Leave to Appeal Denied.