**SECURITIES AND EXCHANGE COMMISSION, Appellant,**

v.

**F. C. DUMAINE, Jr., et al., Appellee.**

**KOPPERS COMPANY, Inc., Appellant,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Appellee.**

Nos. 4852, 4853.

United States Court of Appeals First Circuit.

Dec. 31, 1954.

**310**

William H. Timbers, General Counsel, Washington, D. C., with whom Myron S. Isaacs, Associate General Counsel, Washington, D. C., Myer Feldman, Special Counsel, Pittsburgh, Pa., and Coleman J. Lesser, Attorney, Washington, D. C., were on brief, for Securities and Exchange Commission.

Harold B. Dondis, Boston, Mass., with whom John J. Burns and Burns, Blake & Rich, Boston, Mass., were on brief, for F. C. Dumaine, Jr.

Carleton M. Crick, Pittsburgh, Pa., with whom Edmund S. Ruffin, Jr., Pittsburgh, Pa., was on brief, for Koppers Co., Inc.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

These two appeals from a Supplemental Order of the United States District Court for the District of Massachusetts present, respectively, questions with respect to allowance of a fee and questions with respect to disallowance of expenses both connected with the reorganization of Eastern Gas & Fuel Associates under § 11(e) of the Public Utility Holding Company Act of 1935. 49 Stat. 822, 15 U.S.C.A. § 79k(e).

Eastern Gas & Fuel Associates came into being under the laws of Massachusetts as a voluntary association in July 1929. It was created by the Koppers Company,[1] for the purpose of combining the properties of two of its subsidiaries, Philadelphia Coke Company and The Connecticut Coke Company, with the properties of a holding company also controlled by Koppers interests called Massachusetts Gas Companies which owned all of the securities of two local operating utilities, Boston Consolidated Gas Company and Old Colony Gas Company. Prior to Eastern's reorganization Koppers owned 78% of Eastern's outstanding common stock and 13.4% of its 6% cumulative preferred stock. Thus Eastern, by reason of its ownership of all of the outstanding securities of two

---

1. This corporation merged with related corporations in 1944 to form the appellant, Koppers Company, Inc., referred to herein as Koppers, a Delaware corporation.

operating gas companies, Boston Consolidated and Old Colony, was a holding company as defined in § 2(a) (7) of the Act. So also was Koppers since it owned more than 10% of the voting securities of Eastern. Both Koppers and Eastern registered with the Commission under § 5(a) of the Act and thus became subject to the provisions of its § 11.

In May 1945, the Commission instituted proceedings against Eastern under § 11(b) (2) [2] of the Act and in June 1945, Eastern filed a plan under § 11 (e). Extended hearings were held, amended plans were filed, the evidence was reopened after the record had once been closed, and numerous participants filed statements of views, until at last in February 1950 the Commission issued its Findings and Opinion in which it concluded that Eastern's plan as amended could be approved if it were further amended to provide, among other matters, that Eastern would pay on the application of interested persons such fees and expenses in connection with its reorganization as the Commission should award or allocate. Eastern amended its plan accordingly and the plan as modified was approved by the Commission. The District Court ordered the plan enforced and it has been consummated.

There is no need here to describe the details of Eastern's plan of reorganization. It will suffice to say that the Commission in approving the plan, and the District Court in ordering it enforced, both specifically reserved their respective jurisdictions with respect to the determination of the persons entitled to fees or expenses, the reasonableness of the same and their appropriate allocation.

In due course applications for allowance of fees and reimbursement for expenses were filed by numerous participants in Eastern's reorganization proceedings and hearings were held on the applications after appropriate notice.

The Commission's Division of Public Utilities filed a statement of views, to which various applicants filed exceptions supported by briefs, and the Commission heard oral arguments. As a result the Commission in the exercise of its reserved jurisdiction over fees and expenses filed its Findings of Fact and Opinion, in accordance with which it issued a Supplemental Order in which, *inter alia* it denied the application of F. C. Dumaine, Jr., appellee in No. 4852, for a fee, and the application of Koppers Company, Inc., appellant in No. 4853, for expenses. Both Dumaine and Koppers filed objections to the Commission's action in the court below and that court after hearing entered a Supplemental Order wherein in accordance with the views expressed in a memorandum opinion it ordered the portions of Eastern's plan covering the matter of fees and expenses enforced except as to Dumaine's fee. The court disagreed with the Commission as to this and ordered that Dumaine be paid a fee of $5,000 by Eastern. Wherefore the court remanded the matter to the Commission for the purpose of modifying Eastern's plan and its Supplemental Findings and Opinion accordingly. Both Koppers and the Commission have appealed from this Supplemental Order of the District Court.

The Supplemental Order of the District Court, 120 F.Supp. 460, from which these appeals were taken is not final in form. Nevertheless, nothing remains for the Commission to do in carrying out the District Court's order but to amend its Supplemental Findings and Opinion and Eastern's plan of reorganization to provide for the payment of a fee of $5,000 to Dumaine. This is a purely ministerial act not calling for the exercise of any discretion on the Commission's part. The District Court has adjudicated Dumaine's right to a fee with all the finality it can, and it has taken the only means it has available to

2. At the same time the Commission issued an order of divestment under § 11 (b) (1) of the Act against Koppers which at Koppers request the Commission held in abeyance until after the consummation of Eastern's plan of reorganization.

enforce its adjudication. Under these circumstances we think the District Court's order in spite of its form constitutes a "final decision" appealable under Title 28 U.S.C. § 1291. See Buscaglia v. District Court of San Juan, 1 Cir., 1944, 145 F.2d 274, 281. See also S. E. C. v. Central Illinois Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836, wherein the Supreme Court in a comparable situation did not even mention the existence of any question of appellate jurisdiction.

We shall first consider the appeal of Koppers Company, Inc. in No. 4853.

Koppers applied for reimbursement of expenses in excess of $200,000 for the services of counsel, a financial advisor, several expert witnesses, and for miscellaneous items, which it had incurred in connection with its participation in Eastern's reorganization. The Commission found that the amounts applied for were "not unreasonable," and for the protection of Koppers' stockholders approved its payment of these amounts. But the Commission denied Koppers' application for reimbursement from Eastern. It said that Eastern's recapitalization was required to simplify its capital structure and rectify an unfair and inequitable distribution of voting power, complexities created while Koppers had control of Eastern, and that since holding companies were charged by statute with bringing their systems into compliance with the terms of the Act, it felt that "they should bear their own costs incurred in connection with system proceedings for effecting such compliance rather than shift such costs to the subsidiaries." In addition the Commission pointed out not only that Koppers' large holdings of both classes of Eastern's securities and its dominant position in Eastern's affairs differentiated its participation in Eastern's reorganization from the participation of an individual security holder, but also that Koppers' own compliance with the Act was directly related to Eastern's compliance. The Commission said:

" * * * During these proceedings Koppers was subject to our order issued pursuant to Section 11 (b) (1) of the Act requiring it to divest itself of its holdings in Eastern. This divestment by Koppers was not feasible prior to Eastern's recapitalization and in all probability could not have been effected until Eastern's recapitalization was accomplished. Thus, Koppers' participation had the dual aspect of facilitating its own compliance with the Act and protecting its investment in Eastern."

The District Judge dealt only briefly with Koppers' objection to the denial by the Commission of its application for reimbursement. He merely said, citing S. E. C. v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 and In re Niagara Hudson Power Corp., D.C., 114 F.Supp. 683: "I cannot interfere with the determination of the Commission denying reimbursement of expenses in the amount of $206,299.51 to Koppers, since in my opinion this conclusion has the necessary rational and statutory foundation to allow it freedom from judicial disturbance." [120 F. Supp. 461.]

There can be no doubt, indeed, it is not disputed, that the Commission has implied power under § 11(e) of the Act to award and allocate fees and expenses as a factor or element of the fairness and equitableness of a plan of reorganization. In re Public Service Corp. of New Jersey, 3 Cir., 1954, 211 F.2d 231, 232. The statute, however, nowhere names the persons or describes the services entitled to compensation, nor does it give any hint as to how the amounts that may be awarded are to be determined. But it does not follow from the fact that the Commission's powers with respect to fees and expenses are not specifically spelled out or limited in the statute that the Commission may act arbitrarily or capriciously in the premises. Obviously its awards must be reasonable in amount,

In re North American Light & Power Co., 3 Cir., 1953, 202 F.2d 638, 639, certiorari denied sub nom. S. E. C. v. Masterson, 1953, 346 U.S. 818, 74 S.Ct. 30, and it is equally obvious that the persons or services entitled to receive awards must be selected on some rational basis. The power of the Commission in the field of fees and expenses, stemming as it does from, and being part and parcel of its general power to approve plans of reorganization under § 11 (e), must be as broad as its power to determine whether such a plan is fair and equitable to the persons affected and necessary to effectuate the provisions of the Act. Therefore it follows that the judicial function with respect to Commission action on fees and expenses is the same as the judicial function with respect to Commission action on any other aspect or feature of a plan.

With these general principles in mind we turn to the specific problem presented by Koppers' appeal.

■ The Commission did not purport to deny reimbursement to Koppers by the application of some rule of law or principle generally recognized in courts of equity. Thus the rule of the first Chenery case for which Koppers contends does not apply. S. E. C. v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. Clearly the Commission denied reimbursement to Koppers in the exercise of its administrative judgment or discretion. Wherefore, under the rule of the second Chenery case, 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 and S. E. C. v. Central Illinois Corp., 1949, 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836, the judicial function is only to determine whether the Commission's action is supported by adequate evidence and accords with legal standards. In other words, the record and the Act must be judicially examined to see whether the action taken by the Commission has "any rational and statutory foundation."

■■ This was the approach taken by the District Court, and we think it reached the correct result. Certainly denying reimbursement to Koppers does not run afoul of any statutory command. And the evidence in the record, taken as a whole, supports the findings of fact upon which the Commission based its conclusion. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Whether on those basic facts a corporation in Koppers' position ought, or ought not, to be reimbursed for its expenses by its subsidiary under reorganization is a matter for the Commission to decide in its administrative discretion and we see nothing unreasonable or irrational in the decision reached by the Commission.

Moreover, the Commission did not decide Koppers' application *ad hoc*. Its decision was in conformity with prior rulings of the Commission in comparable situations, and those rulings insofar as they have been judicially reviewed have been sustained in every instance of which we are aware. See In re Public Service Corp. of New Jersey, 3 Cir., 1954, 211 F.2d 231, 234, 235, certiorari denied sub nom. United Corp. v. S. E. C., 1954, 348 U.S. 820, 75 S.Ct. 32; and Standard Gas & Electric Co. v. S. E. C., 8 Cir., 1954, 212 F.2d 407, 410, 411, certiorari denied 1954, 348 U.S. 831, 75 S.Ct. 52, and the cases cited therein.

We think that the Commission's decision as to Koppers was clearly within the scope of its discretion in carrying out the congressional policy underlying the Act, and in support of that view we have nothing to add to the reasoning of the cases last cited.

We turn now to the Commission's appeal from that part of the District Court's order in effect requiring Eastern to pay a fee of $5,000 to Dumaine which invokes quite different principles in that the interpretation of one of the Commission's General Rules and Regulations is involved.

F. C. Dumaine, Jr., had a direct or indirect interest in a substantial block of Eastern's 6 percent preferred stock when proceedings for its reorganization were initiated, and in 1946 he became a member of a committee duly

qualified under the Commission's Rule U–62 to represent the holders of that issue of stock. The Commission found that the Committee through its counsel and experts "contributed materially to the proceedings and the development of the plan," and that Dumaine worked closely with the Committee's counsel, "was consulted on all major issues of the case, and performed many administrative duties in connection with the Committee's work." The Commission did not in any way intimate that it thought the fee requested by Dumaine was excessive or unreasonable in view of his services.[3] It nevertheless denied Dumaine's application for a fee on the ground of a sale of 200 shares of the 6 percent preferred stock made by Dumaine's wife while Eastern's reorganization was in process. It found that Mrs. Dumaine had purchased these shares with her own funds in 1941, that she sold them with her husband's knowledge at a profit after the preferred stockholders' Committee was formed, and that she used the proceeds of the sale to "reduce a bank loan made by her for the purchase of the family residence, thus benefiting her husband." This, the Commission said, constituted a violation of its Rule U–62(g) (2), quoted in material part in the margin,[4] and disqualified Dumaine from an award of compensation from Eastern.

The Commission frankly admitted that its Rule does not specifically forbid stock transactions by a committee member's wife with her own funds. It said:

"* * * While the Rule does not specify that members of the immediate family are within the Rule, we consider that the clear intendment of Rule U–62 is that trad-ing by members of the immediate family of any person connected with a committee falls in the category of prohibited trading by that person. In our opinion, a person connected with a committee has such an interest in any profit which might result from his immediate family's trading, even though such interest may be indirect, that it can influence his activities and conduct as a committee member. Accordingly, we think that, as in bankruptcy cases, our rule must be considered as applying the same prophylactic treatment with respect to trading by the immediate family of a committee representative as to his own trading. Any other practice could lead to widespread abuse by applicants who sought to circumvent the trading prohibition by a fictitious separation of actions and interests of family members."

The District Court disagreed. It felt that the Rule would not stand the interpretation put upon it by the Commission. In the court's view the Commission's construction of its Rule as requiring, without "plain forewarning," either that Dumaine sacrifice a fee for valuable services or that his wife freeze valuable assets for an indefinite time was "unwarranted and unreasonable." Wherefore it ordered the Commission to require Eastern to pay a $5,000 fee to Dumaine and the Commission appealed.

■ We are not here called upon either to accept or to reject the Commission's broad interpretation of its Rule as embracing within its sweep without any attempt at definition the "immediate family of any person con-

---

3. Reimbursement by Eastern for expenses of the Committee in the amount of $9,-599.51 was ordered by the Commission and approved by the District Court.

4. "No securities of the company * * * in reorganization, * * * shall be bought or sold by or for the account of (whether as principal, agent, trustee, or otherwise) any of the persons specified in clauses (A) to (E) below, or in any transaction in which any such person has any beneficial interest, direct or indirect; * * *.

* * * * *

"(B) Any person connected with any committee or other organization formed to act under the authorization so solicited; * * *."

nected with a committee," whoever such persons may be. Cf. Nichols v. Securities and Exchange Commission, 2 Cir., 1954, 211 F.2d 412. The specific question before us is whether the Rule is violated when during a reorganization the wife of a member of a stockholders' committee, with her husband's knowledge, sells shares of stock represented by her husband's committee which she purchased with her own personal funds before reorganization, and uses the proceeds of the sale to reduce a loan incurred in the purchase of a family residence. Our discussion is confined to the precise question before us; we express no opinion on any other.

Clearly the phrase "any beneficial interest, direct or indirect" covers every property or contract right, legal or equitable, in securities traded by any of the persons specified in the Rule. But we do not think that the Rule must necessarily be construed as limited in its reference to recognized legal or equitable rights. By the Rule the Commission, quite properly and very obviously, was attempting to implement and enforce the wholesome principle that committee members should wholeheartedly serve only one master, the holders of the stock represented by the committee, without any of the purely personal distractions necessarily incident to trading in the stock for individual gain. We think the Rule should be construed with its obvious purpose in mind, and that so construed its language is broad enough to cover trading in the stock by a wife with her husband's knowledge, even though she uses her own funds for the purpose.

This does not mean, and is not to be taken for one moment as even indirectly implying, that a husband today still retains some vestigial remnant of his ancient rights in his wife's individual property. We rest our conclusion on the proposition that as a practical matter an economic benefit to a wife is indirectly an economic benefit to a husband, at least when husband and wife are living together as a family unit, and on the further proposition that when a wife with her husband's knowledge trades in a stock represented by a committee of which the husband is a member, the husband cannot possibly be as disinterested in his role of committee member as one in a fiduciary capacity ought to be. Cf. Helvering v. Clifford, 1940, 309 U.S. 331, 335–336, 60 S.Ct. 554, 84 L.Ed. 788.

Perhaps the Commission might by rule categorically forbid a wife's personal trading in securities represented by a committee on which her husband was serving even when she did so without her husband's knowledge, since evidence of collusive action by husband and wife is ordinarily inaccessible and only by such a rule could disinterestedness on the part of committee members be assured. But however that may be, certainly the Commission could, in the application of what it calls "prophylactic treatment," forbid a wife's trading in such securities with her husband's knowledge. And we think this is what the Commission did in its Rule U–62, construed with its obvious purpose in mind, by the use of the phrase "any beneficial interest, direct or indirect." Furthermore, we think this construction of the Rule is clear enough to give Dumaine, as a fiduciary, fair warning as to the possible consequences to him of his wife's transaction.

Moreover, this interpretation of the Rule is in harmony with the interpretation put upon the comparable, but if anything less compelling, language of § 249 of the Bankruptcy Act, 11 U.S.C.A. § 649,[5] by the Court of Appeals for the Third Circuit in In re Midland United Company, 1947, 159 F.2d 340, 347 and by the Court of Appeals for the Fourth Circuit in In re Central States Electric Company, 206 F.2d 70, certiorari denied

---

**5.** "No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, * * *."

sub nom. Henis v. Egan, 1953, 346 U.S. 899, 74 S.Ct. 225. Nor does our interpretation of the Rule conflict with the holding of the Court of Appeals for the Second Circuit in the Nichols case cited above, for in that case the wife's transactions were unknown to the husband.

The order of the District Court is vacated and the cause is remanded to that Court for the entry of an order in conformity with the views expressed in this opinion.