In the Matters of **THIRD AVENUE TRANSIT CORPORATION**, Surface Transportation Corporation of New York, Westchester Street Transportation Company, Inc., the Westchester Electric Railroad Company, Warontas Press, Inc., Debtors.

United States District Court
S. D. New York.
Feb. 6, 1958.

Hiram S. Gans, New York City, pro se.

Richard V. Bandler, New York City, for Securities and Exchange Commission.

Shearman & Sterling & Wright, New York City, for Surface Transit Inc. and Fifth Avenue Coach Lines, Inc., Grayson M. P. Murphy, New York City, of counsel.

442

DIMOCK, District Judge.

■ Hiram S. Gans, counsel to the Lowell H. Brown Committee of Holders of Third Avenue Railway Company Adjustment Mortgage 5% Income Bonds, has petitioned, under Section 243 of the Bankruptcy Act, 11 U.S.C. § 643, for compensation in the amount of $325,000 for services in that capacity and has applied for approval, under section 249, 11 U.S.C. § 649, of a sale of $25,000 principal amount of those bonds for his account on October 23, 1951. The S.E.C. recommends denial of both applications.

Section 249 provides:

"Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such proceeding. No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred."

The claimant pledged the Third Avenue bonds in question as collateral for a bank loan in March, 1951. On October 23, 1951, the date of the sale, claimant's secured loans totaled $17,200 and his collateral totaled $22,941.49, an amount which failed in a slight degree to meet the requirement of the bank that the value of the collateral should be such that the loan should not exceed 70% of it. The bank demanded either a reduction of the loan or additional collateral. It expressed concern over the quality of the collateral, particularly the Third Avenue bonds which had declined in value from $7,343.75 on March 22, 1951 to $5,250 on October 19, 1951. The claimant thereupon requested the bank to forward the Third Avenue bonds to his broker for sale and requested his broker to forward the proceeds of the sale directly to the bank. Thereby the loan was reduced by the proceeds of sale, $5,250. The claimant could have avoided sale of the Third Avenue bonds if he had sold all of the other pledged securities, valued on the date of sale at $17,691.49. That sum would have paid the loan in full and left the claimant the owner of the bonds. Claimant has argued that a forced sale of the bonds would have been inevitable if he had not sold them; but that argument is not supported by facts.

The second sentence of section 249 disqualifies a claimant for compensation in two classes of transactions in securities of the debtor:

1. If the securities have been purchased or sold by the claimant.

2. If the securities have been otherwise acquired or transferred by the claimant or for his account.

In the second class of transactions the claimant is disqualified only if the acquisition or transfer is without the prior consent or approval of the judge.

The first class is the simplest case: a purchase or sale where the claimant acts. It is evident that if the statute is applied literally the transaction under consideration falls within the first class and Mr. Gans is disqualified. The bonds were sold on his order and therefore they were sold by him.

■ If the transaction was one within the first class, the prior consent or subsequent approval of the judge will not avert disqualification. Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 110 F.2d 333. The court cannot disregard the prohibition merely because it finds that a sale by the claimant within the first class was made in good faith, Otis & Co. v. Insurance Bldg. Corp., supra, or that the sale was not fraudulent or made with intent to avoid the statute by subterfuge, In re Reynolds Investing Co. Inc., 3 Cir., 130 F.2d 60, or that hardship would result from a denial of compensation, In

re Norwalk Tire & Rubber Co., D.C. D.Conn., 96 F.Supp. 274.

The transaction falls within the second class if the securities have been acquired or transferred by the claimant or for his account otherwise than where they have been purchased or sold by him. The description in the statute, "otherwise acquired or transferred", refers back to the first class and therefore is to be construed as if it read "acquired or transferred otherwise than where the securities have been purchased or sold by the claimant". Thus a transaction will fall within this description (a) if it is not a purchase or a sale or (b) even though a purchase or a sale, if it is not a purchase or sale *by the claimant* but is merely for his account without any action by him.

Taking up group (a), an illustration of an acquisition by the claimant otherwise than a purchase would be furnished by a bequest to him. When the legislation was in Congress that was cited as a case where the judge was to be given the power to avert disqualification of the claimant.[1] An illustration of a transfer by the claimant otherwise than a sale would perhaps be furnished by a gift by him. The transfer in this case, however, was clearly a sale.

Passing to group (b), can it be said that the Third Avenue bonds, though sold, were not sold by the claimant but were sold for his account by some one else? If so, I have the power to approve the transaction.

A sale, not by the claimant but made for his account by some one else, can best be exemplified by a sale by a pledgee for the account of the claimant but in which the claimant takes no part. I have no doubt that the statute, in permitting relaxation of its rigor where the transfer was for the account of the claimant but was not a sale by him, contemplated, among other situations, a sale by a pledgee. It would seem unfair to penalize the claimant if all that had happened was that he had been unable to pay a loan secured by a pledge of the securities and that the pledgee had therefore sold them for the claimant's account. Under the letter of the statute a judge could approve that transfer and thus avert the forfeiture.

Perhaps the statute could be so liberally construed that, if eventual sale by the pledgee were inevitable, a sale on order of the claimant could be treated as a transfer "for the account of", but not a sale "by", the claimant and thus a transfer which court approval would eliminate as a bar to compensation. Judge Peters in Otis & Co. v. Insurance Bldg. Corp., supra, refers at p. 335 of 110 F.2d to the disqualifying transactions as the usual "voluntary" purchases and sales.

In this case, however, I cannot escape the fact that a sale of the remaining collateral by the claimant would have avoided a sale of the Third Avenue bonds by the pledgee. Their sale by the pledgee was not inevitable.

Circumstances creating financial hardship in the retention of the securities, no matter how appealing, cannot be ground for holding their sale on the order of the claimant to have been, not a sale by him, but merely a transfer for his account. To reach that result the circumstances must be such as to force their sale. I must therefore deny the application for approval and with it the application for compensation.

This result is nothing short of tragic. I agree with counsel for the S.E.C. who says that Mr. Gans participated to a principal extent in the most significant single contribution to the entire case. It was Mr. Gans who, after others had failed in the attempt, succeeded in interesting Fifth Avenue Coach Company which took over the Third Avenue System and thus made the success of the reorganization possible. I am convinced that such was the claimant's interest in his work for his clients, as distinguished from his interest in his own compensation, that he was completely oblivious to the provisions of section 249 at the time that he sold the bonds. I believe him

1. See hearings before a Subcommittee of the Senate Committee on the Judiciary on H.R. 8046, 75th Cong., 2nd Sess. 80, 81.

when he says that he was "rattled" by the margin call. I can think of no information about the situation which was in his hands at that time which was not available to any security holder. Such inferences as may be drawn would indicate that his connection with the proceedings would have led him to buy rather than sell if he had been of a mind to speculate on inside information. He sold his bonds at about 21 and then proceeded to put in efforts on behalf of the reorganization which pre-eminently, among the efforts of all the others, resulted in the appreciation of the market value of the bonds to about 38.

Nevertheless Congress, in its wisdom, has tied the hands of the courts. So strong is the public policy against dealings by persons engaged in the reorganization of a corporation in the securities of that corporation that the courts are not allowed to remunerate from the estate one of them who buys or sells any of those securities. No amount of benefit conferred upon the estate by a claimant can be permitted to make up for a single harmless false step taken innocently in a time of stress.

As suggested by counsel for the S.E. C., the disbursements made by Mr. Gans, as far as possible, will be treated as disbursements by the Committee and will be paid to the Committee for use in reimbursing Mr. Gans.