**SURFACE TRANSIT, INC., et al.,**
Appellants,

v.

**SAXE, BACON & O'SHEA et al.,**
Appellees.

**In re Allowances in ESTATE of THIRD AVENUE TRANSIT CORPORATION, Debtor.**

**No. 263, Docket 25474.**

United States Court of Appeals
Second Circuit.

Argued April 15, 1959.

Decided May 11, 1959.

See also 159 F.Supp. 440.

John A. Wilson, of Shearman & Sterling & Wright, New York City (W. M. L. Robinson, of Shearman & Sterling & Wright, New York City, on the brief), for appellants Surface Transit, Inc., Westchester Street Transportation Co., Inc., and Warontas Press, Inc., the Reorganized Companies.

Abe Fortas, of Arnold, Fortas & Porter, Washington, D. C. (Abe Krash, of Arnold, Fortas & Porter, Washington, D. C., and Hiram S. Gans and Ernest Leff, New York City, on the brief), for appellant Hiram S. Gans.

Mortimer Brenner, of Lehman, Goldmark & Rohrlich, New York City (Jerome L. Abrams, of Lehman, Goldmark & Rohrlich, New York City, on the brief), for appellant I. Howard Lehman, Trustee.

James E. Freehill, New York City (James J. Geraghty, deceased, and Frederick G. Demarest, New York City, on the brief), for appellant Lester T. Doyle, Trustee.

Thomas G. Meeker, Gen. Counsel, and David Ferber, Asst. Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Richard V. Bandler, Special Counsel, and Harvey Frank, Atty., Regional Office, Securities and Exchange Commission, New York City, and Arthur Blasberg, Jr., and Peter H. Morrison, Attys., Securities and Exchange Commission, Washington, D. C., on the brief), for Securities and Exchange Commission.

Osmond K. Fraenkel, of Hays, St. John, Abramson & Heilbron, New York City (Morris Shilensky, of Hays, St. John, Abramson & Heilbron, New York City, on the brief), for appellants Hays, St. John, Abramson & Heilbron.

Thomas O'Gorman FitzGibbon, of Davis, Polk, Wardwell, Sunderland & Kiendl, New York City (Saxe, Bacon & O'Shea and William A. Kaynor, of Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, on the brief), for appellee Saxe, Bacon & O'Shea.

Edward M. Garlock, New York City, pro se.

Morton E. Yohalem and Harold P. Seligson, New York City, for appellees Amott Committee and its counsel Harold P. Seligson, Edmund Burke, Jr., and Morton E. Yohalem.

Arthur Karger, New York City, for appellee Estate of Robert Irving Lennox.

John Dwight Sullivan, of Murphy, Block, Sullivan & Sawyer, New York City (Daniel W. Blumenthal, Victor S. Gettner, and Mendel Lurie, New York City, on the brief), for appellees the O'Connell Committee and counsel.

Harold I. Meyerson, of Kresel & Meyerson, New York City, for appellees Charles B. Wiggin, Edward A. Roberts, E. Ralph Sterling, and Kresel & Meyerson.

Frank H. Heiss, of Kelley, Drye, Newhall & Maginnes, New York City (John J. Loflin, Jr., of Kelley, Drye, Newhall & Maginnes, New York City, on the brief), for appellees The Hanover Bank, Indenture Trustee, and Kelley, Drye, Newhall & Maginnes, counsel for The Hanover Bank.

William Mertens, New York City, pro se and counsel for appellee Tort Claimants Committee.

Dennis M. Hurley and Joseph E. Swierzbinski, New York City, for appellee Edward C. Maguire, Special Counsel to Trustees.

Charles Poletti, New York City, Edmund B. Hennefeld, of Hoffman, Buchwald, Nadel, Cohen & Hoffman, and Buchman & Buchman, New York City, for appellees Charles Poletti, Hoffman, Buchwald, Nadel, Cohen & Hoffman, and Buchman & Buchman.

Sidney R. Nussenfeld and Wagner, Quillinan & Tennant, New York City, for appellee Wagner, Quillinan & Tennant.

Oscar S. Rosner and Abraham Altus, of Baker, Obermeier & Rosner, New York City, for appellee Baker, Obermeier & Rosner, co-counsel for Tinker Committee.

Before CLARK, Chief Judge, and SWAN and MOORE, Circuit Judges.

CLARK, Chief Judge.

This is the final round in the Chapter X reorganization of the Third Avenue Transit Corporation, a common carrier of passengers, and its subsidiaries instituted by the filing of an involuntary petition on October 25, 1948. The debtor at

that time was enmeshed in what seemed to be insoluble problems involving limitations on the fares it could charge, heavy wage demands of its employees, and franchise tax demands of New York City. The parties to this appeal are in near unanimity that the reorganization was unusually successful in achieving a workable solution of these problems and in creating reorganized companies of considerable financial strength.[1] Amidst this genuine glow of success it is indeed difficult for any court or agency dispassionately to evaluate the several applications for compensation filed below. For nearly all the participants richly merit the heartfelt thanks of the court and the public, as well as those of the particular group or interest their efforts may have more directly benefited.

■ The granting of allowances, however, involves a more complex amalgamation of considerations which can be only imperfectly sketched out for application in future cases. Economy of administration, the burden the estate can safely bear, the value of the services to it, the duplication of service by many counsel representing the same interest, and the reasonableness and fairness of the compensation to each applicant are all steps along the way to a final determination. Finn v. Childs Co., 2 Cir., 181 F.2d 431; Newman & Bisco v. Realty Associates Securities Corp., 2 Cir., 173 F.2d 609; In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599; In re Paramount Publix Corp., 2 Cir., 85 F.2d 588, certiorari denied Palmer v. Paramount Pictures, 300 U.S. 655, 57 S.Ct. 432, 81 L. Ed. 865. And the recommendations of the Securities and Exchange Commission, representative of the public interest, are entitled to great weight. Scribner & Miller v. Conway, 2 Cir., 238 F.2d 905; Finn v. Childs Co., supra, 2 Cir., 181

F.2d 431. Ultimately, however, the court's determination must be made on the facts and circumstances of each case.

Some forty-five applications for compensation were filed in the instant proceedings below, requesting over $4,000,-000 in fees and disbursements. While on the record before us we cannot say that Judge Dimock's aggregate allowance of $2,028,504.73 is more than the reorganized companies can safely bear, in a variety of respects we are constrained to disagree with specific awards made by the court below. We shall discuss the modifications we are ordering; in the matters not discussed the allowances are affirmed. And we shall limit our discussion to a brief exposition of our substantial reasons, assuming familiarity with the comprehensive opinion of the district court.

■ In any reorganization the trustee and his counsel normally bear by far the largest burden of any of the participants. This was particularly true here, where fare, wage and tax rates facing the debtor had first to be modified before any readjustment of its financial structure would be of value. But on the other hand the compensation of these participants was always assured, and not contingent on success, as, for example, that of bondholders' representatives largely is; and much of the total time logged by trustee's counsel was in the performance of essentially routine work actually done by firm associates. We affirm the district court's award to trustee Lehman and his successor Doyle, and reduce the award of $900,-000 granted trustee's counsel Saxe, Bacon & O'Shea to the amount suggested by the S. E. C., namely, $800,000.

The district court awarded The Hanover Bank, trustee of the Refunding Mortgage, $35,000—a substantial in-

---

1. The affairs of this debtor have been before the court in many aspects. See, e. g., In re Third Avenue Transit Corp., 2 Cir., 192 F.2d 971; In re Third Avenue Transit Corp., 2 Cir., 198 F.2d 703; In re Third Avenue Transit Corp., 2 Cir., 222 F.2d 466; In re Third Avenue Transit Corp., 2 Cir., 230 F.2d 425; In re Third Avenue Transit Corp., 2 Cir., 233 F.2d 310; In re Third Avenue Transit Corp., 2 Cir., 238 F.2d 665, certiorari denied Woolfson v. Doyle, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599; Johnson Fare Box Co. v. Doyle, 2 Cir., 250 F. 2d 656.

crease over the Commission's recommended award of $20,000. Although it considered the same factors as did the Commission in making its recommendation, the court also expressed the view that the bank's charge to a private client for the extraordinary services it rendered in this reorganization would be in the neighborhood of $70,000. Giving full weight to this holding, we are yet constrained to conclude that the increase granted below was overgenerous. We reduce this award to $30,000.

■ Because of their great assistance to the court, Judge Dimock also granted awards substantially in excess of the S. E. C.'s recommendations to Kelley, Drye, Newhall & Maginnes, counsel to the indenture trustee, to Edward M. Garlock, and to counsel for the Amott Committee, Messrs. Seligson, Burke, and Yohalem. While neither the Commission nor the reorganized companies on this appeal depreciate the value of these counsel's services, yet in view of the degree of duplication the Commission found in the efforts of the bondholders' representatives we must hold that the court's increases of the Commission's recommended allowances, ranging from 30% in the case of Mr. Garlock to 50% to Mr. Seligson and his associates, were excessive. We award the Kelley firm $117,500, Mr. Garlock $132,500, and Mr. Seligson et al. $125,-000.

■ The allowance to Garlock raises another problem brought us by the appeal of Hays, St. John, Abramson & Heilbron. This firm was co-counsel for petitioning creditors, along with Garlock and, for a short time before he died, Mr. Robert Irving Lennox, whose estate also received an award. Prior to filing the petition the Hays firm and Garlock entered into an oral agreement to share equally in such compensation as they received from the reorganization. A falling out shortly occurred between them, however. While Garlock carried a substantial burden throughout the reorganization, the Hays firm, with the exception of a few instances, merely held itself ready to give assistance to Garlock,

should he have required it. The trial court found that the oral agreement between them as to compensation clearly contemplated an equal division of work as well as of compensation. As this did not occur we see no error in the award of separate compensation to each. Clearly the court has the power to do so. Leiman v. Guttman, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453; Brown v. Gerdes, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659; Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820. And the allowance of $10,000 granted to the firm seems fair and reasonable compensation for the services it actually rendered the estate.

The Estate of Robert Irving Lennox was awarded $7,500 for Mr. Lennox's short service as co-counsel to petitioning creditors with Mr. Garlock and the Hays firm. This was the sum recommended by the S. E. C. Undoubtedly the estate is somewhat at a disadvantage in assembling records as to the work done by its decedent. But we cannot allow an award based on speculation to stand; and the present award is excessive compensation for Mr. Lennox's limited proven activity. Hence we are compelled to reduce this allowance to $2,500.

Similarly the Commission's own description of the services performed by Murphy, Block, Sullivan & Sawyer, counsel for the O'Connell Committee—yet another committee of refunding bondholders—suggests to us that the district court ought to have cut, rather than raised by $5,000, the S. E. C.'s proposed award of $45,000. We modify the order below to grant them $40,000.

■ The court granted Kresel & Meyerson, co-counsel for the Tinker Committee of adjustment mortgage bondholders, an increase of 100% over the S. E. C.'s recommended award of $25,000. Without detracting from the praise Judge Dimock gave these applicants for their assistance, we must note that he did not disturb the S. E. C.'s finding that they contributed only 1,000 hours of useful nonduplicative work. Viewed in this light the court's award seems indeed gen-

erous. We feel that $30 an hour is ample consideration for these applicants' contributions, and we reduce their award to $30,000.

The court also doubled the S. E. C.'s recommended allowance to Charles Poletti; Hoffman, Buchwald, Nadel, Cohen & Hoffman; and Buchman & Buchman on what we feel was an inadequate basis. These applicants, co-counsel to various bondholders, obtained for the estate a commitment as to dividends from Fifth Avenue Coach Lines, purchasers of the reorganized companies. This commitment actually brought to the estate one dividend on the stock paid for the companies amounting to $168,000 and assured the estate that other dividends would not be lost through a delay in the consummation of the plan. We do not feel that the S. E. C. unduly minimized the value of this contribution and hence we reduce this award to $12,500—the sum the Commission recommended.

■ There remain to be considered the appeal of Hiram S. Gans from Judge Dimock's decision, D.C.S.D.N.Y., 159 F. Supp. 440, disqualifying him from all compensation by virtue of § 249 of the Bankruptcy Act, 11 U.S.C. § 649, and the S. E. C.'s objection to Judge Dimock's refusal to disqualify the firm of Baker, Obermeier & Rosner under the same statute. Gans, an active participant in this proceeding from its inception in August 1948, was counsel to an adjustment bondholders' committee and was instrumental in bringing in Fifth Avenue Coach Lines as purchasers of the reorganized companies. In October 1951 in response to a margin call by his pledgee he sold for $5,271.14 certain Third Avenue bonds which he had owned at the inception of his participation in the reorganization and had pledged in March 1951 along with other securities as collateral for a loan.

■ Section 249 bars an allowance to any person who while acting in a fiduciary or representative capacity in the reorganization proceedings "has purchased or sold" stock of or claims against the debtor, "or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred." Concededly the power of the court to consent to or approve a transaction extends only to those transactions embraced in the second of the above quoted phrases and does not extend to the first described transfers. Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 110 F.2d 333. It would seem that any disposal of securities of the debtor pursuant to a pledge arrangement instituted after the applicant had assumed a representative or fiduciary capacity in a reorganization must fall within the class of transactions absolutely prohibited. Sale by the pledgee is of course pursuant to a power of sale granted by the owner; and such a pledge may often operate in practical effect as a "stop loss order"—an order to a broker to sell if the market value of the securities drops below a specific price. If one exercising the perquisites and receiving the benefits of ownership can thus easily avoid the statutory bar by the form chosen for the particular transaction, its deterrent effect is largely dissipated.

Alternatively Judge Dimock's finding that Gans could have met his pledgee's margin call without selling any of the Third Avenue bonds had he chosen to do so is amply sustained. At that date he was indebted to the pledgee for a total of $21,496 (including $4,296 on a personal note to which this collateral was technically also subject). The value of the other securities pledged as collateral for these loans totaled $17,691.49; it also affirmatively appears in the record that Gans then owned additional Third Avenue bonds and Mexican Railway bonds of substantial value. Clearly from these resources Gans by further pledge or other sales could have avoided a sale of any of his Third Avenue securities. Under these circumstances the court could not properly approve the transaction, since the decision to sell was clearly Gans' own, not the pledgee's.

■ This result may well work harshly in individual cases as here. But in § 249 of the Bankruptcy Act Congress clearly intended drastic results and thought them necessary to eliminate the serious abuses of insider information which had long been existent in equity reorganizations. See 6 Collier on Bankruptcy ¶13.18 (1947). In the past excuses of inadvertence or *de minimis* have not been permitted to undermine the section, and we do not feel we can narrowly constrict it here. Cf. Otis & Co. v. Insurance Bldg. Corp., supra, 1 Cir., 110 F.2d 333; In re Norwalk Tire & Rubber Co., D.C.Conn., 96 F.Supp. 274, 276.

■ We reach a similar conclusion as to the disqualification of the firm of Baker, Obermeier & Rosner. The basis on which the S. E. C. urges this disqualification is a sale of $5,000 face amount of Third Avenue adjustment income bonds by the wife of Oscar S. Rosner, the firm's most active participant in the reorganization. Judge Dimock found on undisputed evidence that Mrs. Rosner's decision to sell was based entirely on the advice of her investment broker, and that no inside information possessed by Mr. Rosner entered into the decision. But it also appears that Mr. Rosner not only was fully aware of the contemplated sale, but himself handled the mechanics of the transaction with the broker. The statute § 249 has a very broad sweep applying to stock of the debtor in which "a beneficial interest, direct or indirect, has been acquired or transferred by [the attorney] or for his account, after the commencement of such proceeding"; and facts equivalent to these present here on several occasions have been held sufficient basis for the statutory disqualification. Indeed we know of no actual holdings to the contrary. See S. E. C. v. Dumaine, 1 Cir., 218 F.2d 308, 313–316, certiorari denied Dumaine v. S. E. C., 349 U.S. 929, 75 S.Ct. 771, 99 L.Ed. 1259; In re Midland United Co., 3 Cir., 159 F.2d 340; In re Central States Elec. Corp., 4 Cir., 206 F.2d 70, 71–72, certiorari denied Henis v.

Egan, 346 U.S. 899, 74 S.Ct. 225, 98 L. Ed. 399. The language of Berner v. Equitable Office Bldg. Corp., 2 Cir., 175 F.2d 218, and Nichols v. S. E. C., 2 Cir., 211 F.2d 412, 416–417, on which the court below relied, is perhaps broader than those decisions warrant. Each case is clearly distinguishable on its facts from the instant situation; and on the reasoning of the above cited decisions we hold that the Rosner firm is disqualified from compensation by the transaction here complained of.

Hence the following awards will be reduced to the sums stated: Saxe, Bacon & O'Shea to $800,000; The Hanover Bank to $30,000; Kelley, Drye, Newhall & Maginnes to $117,500; Edward M. Garlock to $132,500; Harold P. Seligson, Edmund Burke, Jr., and Morton E. Yohalem to $125,000; the Estate of Robert Irving Lennox to $2,500; Murphy, Block, Sullivan & Sawyer to $40,000; Kresel & Meyerson to $30,000; Charles Poletti, Hoffman, Buchwald, Nadel, Cohen & Hoffman, and Buchman & Buchman to $12,500. And affirming the denial of an allowance to Hiram S. Gans, we reverse the award to Baker, Obermeier & Rosner. In other respects the orders are affirmed.

SWAN, Circuit Judge (dissenting in part).

I disagree with my brothers' decision as to disqualification of the firm of Baker, Obermeier & Rosner. It is my understanding, as it was Judge Dimock's, that the rule in this circuit is that under § 249 the fiduciary is not disqualified for compensation by transactions in which he had no beneficial interest, and that he is not conclusively presumed to have a beneficial interest in transactions of his wife. Judge Dimock gave the matter very careful consideration. For the reasons stated in his opinion I think the award to Baker, Obermeier & Rosner should be allowed to stand.

In other respects I concur in the opinion of my brothers.