Lawrence **SANDERS**, Trustee in Bankruptcy of Ace Sales Company, Appellee,

v.

**PROVIDENCE WASHINGTON INSURANCE COMPANY**, Tyree C. Derrick, Appellant.

No. 71–1016.

United States Court of Appeals, Eighth Circuit.

May 17, 1971.

**1318**

Tyree C. Derrick, St. Louis, Mo., pro se.

Curtis L. Mann, St. Louis, Mo., for appellee.

Before GIBSON, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Appellant Tyree C. Derrick, an attorney for Ace Sales Company (Ace), brought a motion before the federal district court seeking to enforce an attorney's lien. Attorney Derrick contended that under Missouri law he possessed a valid lien arising out of a contingent fee contract for his services upon the proceeds of a settlement effected between the trustee in bankruptcy of Ace and defendant Providence Washington Insurance Company (Providence). The district court, Judge Harper, dismissed Derrick's motion for want of jurisdiction, concluding that he must first seek relief in the bankruptcy court. Sanders v. Providence Washington Insurance Co., 320 F.Supp. 1189 (E.D.Mo.1970). Appellant Derrick prosecutes this timely appeal from the district court's dismissal. We affirm the district court's disposition of this controversy.

The record discloses that on July 1, 1969, Ace employed attorneys William L. Weiss and appellant Derrick, under a thirty percent contingent fee contract, to represent it to recover fire insurance proceeds under a policy issued by Providence. The claim arose from a fire on the preceding June 16, which completely destroyed Ace's stock of merchandise. Ace, the insured under the Providence policy, filed an action against Providence in Missouri state court on November 10, 1969, seeking recovery of $300,000, plus attorney's fees, interest and costs. Almost contemporaneously with the institution of the action, creditors petitioned the bankruptcy court seeking to have Ace declared bankrupt. Within a month, the bankruptcy court adjudicated Ace bankrupt. Thereafter, defendant Providence, a Rhode Island corporation, re-moved the action to the federal district court.

In December, 1969, Ace's receiver moved to stay court proceedings pending the appointment of a qualified trustee in bankruptcy. On December 18, 1969, the bankruptcy court enjoined the insurer from paying any part of the insurance proceeds to anyone but a receiver or trustee for the bankrupt. In January of 1970, Attorney Weiss withdrew from the action. In February, Judge Harper authorized Lawrence Sanders, trustee in bankruptcy of Ace Sales, to be "substituted as party plaintiff and the caption of the lawsuit * * * amended." In May, 1970, the referee in bankruptcy rejected the trustee's petition that Attorney Derrick be employed as special counsel to prosecute the pending insurance claim, reasoning that:

> a conflict may subsequently arise between trustee and said attorney in connection with the claim of the attorney to fees based upon a contingent fee contract entered into between the attorney and the bankrupt prior to the adjudication in bankruptcy * * *.

On September 15, 1970, the bankruptcy court authorized the trustee to settle the pending lawsuit for the fire insurance policy proceeds upon payment of $126,500. This order afforded protection to Derrick on his claim for attorney's fees by providing that the settlement draft be made payable to the trustee and Derrick. The order expressly recited that nothing contained therein would "be deemed to be a waiver of any rights which either the Trustee or Tyree C. Derrick may have in any dispute" between those parties. On the same day the order was issued, an attorney for the trustee entered an appearance in the federal district court. One week later, Derrick filed his motion claiming compensation upon his contingent fee contract. The trustee moved for a dismissal of this motion on the grounds that the "Bankruptcy Court is the proper forum * *."

■ The parties in the district court did not dispute the obligation of the

trustee to pay Derrick a certain sum from the settlement proceeds. The basic controversy between them concerns the amount to be paid Derrick. The merits of that claim are not before us. We consider here only the district court's ruling on the issue of jurisdiction. We note initially that we have jurisdiction of this appeal under the "collateral order doctrine" enunciated in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[1]

Appellant Derrick urges that the federal district court possessed jurisdiction to rule on his motion since (a) the bankruptcy court had expressly consented to the nonbankruptcy court deciding this lien claim, or (b) by acquiring jurisdiction over the cause of action for insurance proceeds, the federal district court also acquired complete and unlimited power over any recovery through settlement of the action, including attorney's fees. The issue of the district court's jurisdiction must be examined in light of the general rule which declares that upon adjudication of bankruptcy, the jurisdiction of the bankruptcy court becomes paramount and exclusive over all property of the bankrupt, wherever situated, as of the date of filing of the petition in bankruptcy. Taylor v. Sternberg, 293 U.S. 470, 472, 55 S.Ct. 260, 79 L.Ed. 599 (1935); Gross v. Irving Trust Co., 289 U.S. 342, 344, 53 S.Ct. 605, 77 L.Ed. 1243 (1933); 11 U.S.C. § 11.

The record in the instant case affords no basis to conclude that the bankruptcy court expressly consented that the federal district court might resolve the issue concerning appellant-attorney's lien claim for services rendered. The order directing the trustee in bankruptcy to settle the claim and dismiss the pending lawsuit acknowledged that a dispute concerning Derrick's claim for attorney's fees did exist, but expressly provided that neither party waived any rights in that dispute. Such language manifests a clear intent that the rights of the parties remained as they were prior to the settlement agreement, and that settlement and dismissal of the action did not in any manner affect the attorney's fee claim by appellant Derrick. Absent any express consent, appellant Derrick alternatively would find an implied consent to the nonbankruptcy court's exercise of jurisdiction over the attorney's fee controversy through the permission granted the trustee to continue the bankrupt's action in the federal district court.

Both parties generally concede that the resolution of the jurisdictional issue presented on this appeal rests upon our interpretation and application of the rules enunciated in the following cases: United States v. Transocean Air Lines, Inc., 356 F.2d 702 (5th Cir. 1966); Jackson v. Vance, 179 F.2d 154 (10th Cir.), cert. denied, 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950); and Sherman v. Buckley, 119 F.2d 280 (2d Cir.), cert. denied, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941). Appellant Derrick contends that the decisions in *Transocean* and *Buckley* compel a reversal of the district court's ruling, while the appellee, like the district court, relies upon the ruling in *Jackson*.

In *Transocean*, the attorneys sought a charging lien for their services after having successfully represented Transocean in the prosecution of a claim against the United States. This litigation had extended over a period of several years, until Transocean obtained a judgment on the merits in a federal district court for the Southern District of Florida. The judgment entered deferred ascertainment of damages pending an

---

1. A collateral order is an offshoot of the principal litigation which is immediately appealable as a "final decision" because of the practicalities of the litigation and because it disposes of a matter separate from the merits of the case. See Norman v. McKee, 431 F.2d 769 (9th Cir. 1970);

Redding & Co. v. Russwine Constr. Corp., 135 U.S. App. D.C. 153, 417 F.2d 721 (1969); Bohms v. Gardner, 381 F.2d 283 (8th Cir. 1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); Phelps v. Burnham, 327 F.2d 812 (2d Cir. 1964).

agreement of the parties on that question, or in the event of disagreement, referring the matter to a commissioner or master. At that point in the litigation, the United States conceded to owing approximately $70,000.

Subsequent to the entry of judgment, but prior to the fixing of damages, the federal district court for the Northern District of California adjudicated Transocean bankrupt. In this bankruptcy proceeding, the United States asserted priority claims in excess of $500,000. The United States and the trustee in bankruptcy stipulated that the Florida litigation would be settled for $75,000 as an offset to the government's claim asserted in the bankruptcy proceedings. The parties also agreed to dismiss the Florida litigation. Transocean's Florida attorneys then sought allowance of their fees as an incident of the proposed settlement and dismissal. The Florida federal district court granted relief. On appeal, the Fifth Circuit affirmed, holding that the trial court could determine the lien claim and award recovery of attorney's fees, since "[t]he lien is annexed to the judgment and is enforceable in the court where the judgment is entered." 356 F.2d at 706. The court observed that the attorneys possessed a "vested right" to participate in the recovery and that the judgment had "ripened the charging lien of counsel." 356 F.2d at 705. The court specifically noted that the objection to its jurisdiction was not raised by the trustee, but by the government.

In Sherman v. Buckley, *supra,* two attorneys claiming a charging lien had previously represented the plaintiff on a fifty percent contingent fee contract in an effort to collect a claim against certain defendants. Plaintiff was nonsuited in the trial court and these attorneys initiated an appeal. Plaintiff's bankruptcy then intervened. The trustee in bankruptcy engaged other attorneys to continue the appeal, but in the name of the original plaintiff. The state court, in permitting the substitution of counsel, directed that the replaced attorneys should receive thirty percent of any eventual recovery as their fee, and entered an order creating a charging lien in their favor. The new attorneys succeeded in obtaining a reversal on appeal. Thereafter, they agreed, with the consent of the bankruptcy court, to settle the claim for $40,000. In order to prevent the original attorneys from collecting thirty percent of the award, the bankruptcy court enjoined them from enforcing their charging lien in the state court. The bankruptcy court ruled that the state court had lacked jurisdiction to issue the order fixing any charging lien for these attorneys. The Second Circuit reversed. Judge Learned Hand, speaking for the court, stated in part:

> In spite of the fact that the jurisdiction of the bankruptcy court is usually described as "exclusive," it may consent to have the interests of third persons in property of which the bankrupt had possession, adjudicated in a state court if that is more convenient. [citations omitted] As we have said, the trustee got the permission of the bankruptcy court to allow the action to be prosecuted in the state court. That necessarily involved a consent to such incidents as the exercise of that court's jurisdiction might involve, among them that, as a condition upon the substitution of new attorneys, the charging lien of the displaced attorneys must be liquidated. [119 F.2d at 282]

Turning to a consideration of Jackson v. Vance, *supra,* we note that its facts bear considerable resemblance to the facts in the instant case. There, the plaintiff's merchandise was destroyed by fire. He then employed two attorneys (Jackson and Horan) to collect insurance proceeds on a contingent fee basis, fifteen percent if without suit, more on trial or appeal. The attorneys then instituted an action in the state court, and almost contemporaneously, the insured was adjudicated bankrupt. The bankruptcy court appointed a trustee who in turn employed his own attorneys. The trustee then substituted himself as plain-

tiff in the state court action. In permitting this substitution, the nonbankruptcy court granted attorneys Jackson and Horan a lien for fifteen percent of any sums which might be recovered. The parties thereafter settled their lawsuit.

As in the instant case, the attorneys in *Jackson,* who had served the plaintiff before bankruptcy, filed a motion seeking to prevent any final settlement of the action until their lien had been satisfied. In *Jackson,* however, the bankruptcy court's order approving the settlement specifically directed that the lien claims of Jackson and Horan be preserved for further consideration and, later, the referee awarded these attorneys the full amount claimed. The judge of the bankruptcy court reversed that ruling and remanded for a determination of the fee based on quantum meruit. The Tenth Circuit affirmed on appeal, with Judge Murrah dissenting. In rejecting the power of the nonbankruptcy court to adjudicate the attorney's fee claim, the majority said:

> * * * since the order disclosed that Stuart [insured] had been adjudged a bankrupt, that a trustee in bankruptcy had been selected, and that the trustee was being substituted as party plaintiff, it affirmatively appeared from the face of the order that it was a nullity insofar as it undertook to declare a charging and retaining lien in favor of appellants because made without jurisdiction of the subject matter, such jurisdiction having passed to the bankruptcy court. [179 F.2d at 158]

The majority in *Jackson* also distinguished Sherman v. Buckley, *supra,* as

showing circumstances demonstrating consent by the bankruptcy court to the adjudication of the attorney's lien issue in the nonbankruptcy forum. By contrast, the court concluded that no such consent existed in *Jackson* since "the trustee acted with reasonable dispatch in having himself substituted as party plaintiff and in having a substitution of attorneys effected." 179 F.2d at 157. Perhaps the purported distinction between the two cases may be more imaginary than real,[2] but we think that the circumstances in the instant case are more analogous to those in *Jackson* than *Buckley.* The ruling in *Jackson* further reinforces the congressional policy expressed in the Bankruptcy Act that the bankruptcy court adjudicate claims over a bankrupt's assets.

Derrick presents no compelling reasons on this record for the intervention of a nonbankruptcy court over a rather typical creditor-debtor claim, except for his status as an attorney. The case pending in federal court had not progressed to the trial stage. The record discloses less counsel participation in actual court proceedings than that demonstrated by the lien claimants in Sherman v. Buckley, *supra,* and Transocean, *supra.* This factor alone would not be dispositive of his claim. Derrick's claim, in our view, is unexceptional.[3]

We think the district court properly determined that attorney Derrick must litigate his claim in the bankruptcy court, which clearly never waived its jurisdiction. That forum should grant Derrick an opportunity to present his contentions in the atmosphere of a plenary hearing.[4]

2. See 2 COLLIER ON BANKRUPTCY ¶ 23.17, n. 3 (14th ed. 1970).

3. The Supreme Court's opinion in Brown v. Gerdes, 321 U.S. 178, 184, 64 S.Ct. 487, 88 L.Ed. 659 (1944), implies disapproval of the decision in Sherman v. Buckley, *supra.*

4. At oral argument, the parties agreed, without prejudice to the appeal, that the settlement with Providence should be

consummated and that thirty percent of the proceeds be placed at interest in an appropriate depository pending a final determination of appellant Derrick's claim for attorney's fees. The parties have filed a written stipulation in conformity with their agreement. Consistent with this opinion, we have separately filed an appropriate order in the light of the stipulation.