MESKILL, Circuit Judge:
Once again we are faced with the unsavory task of reviewing the propriety of an order imposing sanctions upon counsel for a party in a bankruptcy proceeding based upon attorney misconduct. Two law firms, Arutt, Nachamie & Benjamin (the “Arutt firm”) and Israel & Raley (the “Israel firm”),[1] which represented the debtor-in-possession, Futuronics Corporation (Futu-ronics), in a proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701-99 (1976), appeal from judgments entered in the United States District Court for the Southern District of New York, Duffy, J., denying the Arutt and Israel firms compensation for any services performed as general counsel and special counsel for the debt- or-in-possession and ordering the return to Futuronics of fees which had been paid with interest accruing from July 15, 1980. Judge Duffy’s decision affirmed the order of the bankruptcy court, Lesser, J., except insofar as it had awarded the firms any compensation. The district court determined that Judge Lesser had abused his discretion in allowing the appellants any fees for their professional services in light of the two firms’ violations of Bankruptcy Rules 215 [2] and 219 [3] and breaches of their *466 fiduciary obligations as officers of the court. For the reasons set forth below, we affirm.[4]
BACKGROUND
In January 1975, Futuronics filed its petition in bankruptcy under Chapter XI.[5] On the same day an order was entered authorizing the appointment of the Arutt firm as counsel for the debtor under a general retainer.. The Arutt firm served as counsel for the debtor until September 1977. The action was originally assigned to Bankruptcy Judge Asa Herzog. Upon Judge Her-zog’s retirement, the action was reassigned to Bankruptcy Judge Stanley T. Lesser.
The Arutt firm quickly discovered that Futuronics’ financial ill health in 1975 was largely attributable to trouble it had been experiencing with a series of substantial government contracts. Thus, the firm decided that special counsel should be retained who possessed the requisite expertise to handle complex government contract litigation. At the suggestion of Albert Blanck, the president of Futuronics, the Israel firm was contacted. The Israel firm was appointed as special counsel for the debtor by an order of Bankruptcy Judge Herzog dated March 11,1975.[6] The order purported to fix the compensation to be given the Israel firm; it incorporated by reference an affidavit of Mr. Israel which listed a $15,000 retainer, various contingency fees for government contracts, and specific hourly rates for Mr. Israel and Mr. Raley. Although a creditors’ committee and its counsel had already been selected, the March 11 order was entered ex parte.[7]
The Israel firm succeeded in obtaining a settlement stipulation in January 1979 from the government, subject to the approval of the bankruptcy court, which provided that “(1) the Government would pay Futuronics $4,650,000; (2) the Government would withdraw its $8,700,000 claim in the Futuronics’ Chapter XI case; and (3) portions of filed and unfiled claims by subcontractors of Fu-turonics would be paid directly by the Government, relieving Futuronics of responsibility therefor, as if the prime contracts in question had been terminated for the convenience of the Government.” A. 8-9. Judge Lesser approved the settlement after a hearing held in February 1979. Judge Lesser lauded the Israel firm for its work and noted in his opinion that the settlement would enable “the debtor ... to propose a plan paying a significant amount, possibly even 100%, to general creditors.” A. 2.
Shortly after approval of the settlement of the government contract claims, the Israel firm submitted proposed orders seeking to have the bankruptcy court fix its compensation in accordance with the schedule incorporated by reference in Judge Her-zog’s order. Judge Lesser refused to sign the orders, reaffirming his previously expressed position that he was not bound by Judge Herzog’s March 11 order. Instead, Judge Lesser on March 21,1979 directed the Israel firm to seek allowances for compensation in a manner consistent with Bank *467 ruptcy Rule 219. In an affidavit sworn to April 9, 1979, the Israel firm presented a detailed “Statement of Services Rendered by Special Counsel.” A. 10. The affidavit disclosed to the court for the first time that the Israel firm had paid the Arutt firm approximately $60,000 in fees in connection with the government contract litigation. Futuronics’ present counsel, the Finley firm,[8] seized upon this disclosure and moved on behalf of Futuronics that all compensation to the Arutt and Israel firms be denied based upon the apparent fee-sharing arrangement that had been entered into between the firms in violation of Bankruptcy Rule 219(d). Judge Lesser stated: “What the Court had believed was to be a proceeding to assess the reasonable value of fees to be paid to the Israel firm for a job well done, and the binding effect, if any, of Judge Herzog’s March 11,1975 order, took a radically different turn.” A. 11.
After a full hearing, Judge Lesser determined that any work performed by the Arutt firm with respect to the government contract litigation had been done without court approval and thus in direct violation of Rule 215(a). Furthermore, Judge Lesser rioted that the proposed order submitted in March 1975 for the appointment of the Israel firm as special counsel “did not contain the affirmation of Blanck as president of Futuronics”; “did not reveal the connections between the Israel and Arutt firms”; and falsely stated that “no prior application for the relief sought” had been made. A. 17. Judge Lesser discovered in the course of the hearings that contrary to the statement contained in the application for the March 11 order, a prior application had indeed been presented to and rejected by Judge Herzog in February 1975. The previous application had included an affidavit which Judge Lesser determined embraced “a bald fee-splitting agreement, [which had been] foisted on the Israel firm by the Arutt firm, but accepted by the Israel firm with full knowledge of its implications.” A. 12. Samuel Arutt of the Arutt firm conceded below that Judge Herzog had rejected the proposed February order “because of the Vs-2/s” fee-sharing arrangement contained in it.[9] Judge Lesser discovered that after Judge Herzog had rejected the initial application, another was submitted which deleted the objectionable language concerning fee sharing. The bankruptcy judge determined that the parties decided nevertheless to maintain their fee-sharing arrangement as evidenced by a letter dated March 3, 1975, without disclosing the agreement to the court. Thus, Judge Lesser concluded that Judge Herzog had signed the March 11 order without knowledge of the underlying agreement that had been entered into between the Arutt and Israel firms.
The record reveals that between March 1976 and April 1977, the Israel firm received approximately $190,000 in interim advances,[10] and that between May 1976 and May 1977 the Israel firm paid the Arutt firm approximately $60,000, or nearly one-third of its receipts. Judge Lesser noted that the Israel firm applied for interim compensation from the court on “perhaps a dozen occasions” and that each time “the Arutt firm participated in and urged the approval” of the applications. A. 14. On one occasion in 1977, Judge Lesser explained to the-parties that he was denying interim allowances because the Israel firm had been paid fully up to date. The two law firms responded only with the contention that Judge Lesser was bound to the terms of the March 11 order that provided for interim allowances. The parties never *468 once disclosed to the court that the Israel firm’s financial hardship resulted from its payment of one-third of its interim advances to the Arutt firm, and never informed the court of the retainer agreement between the two firms. Judge Lesser stated in his opinion:
It is inexplicable, and totally inconsistent with the Israel firm’s present position that it never doubted the propriety of its arrangement with the Arutt firm, that neither Mr. Israel nor Mr. Raley disclosed to the Court the precipitating cause of its financial hardship in the case, to wit, that it had paid the Arutt firm approximately one-third of the funds that had been received from Futuronics.
A. 15. Judge Lesser concluded that the Arutt and Israel firms had entered into an illicit fee-sharing arrangement in violation of Bankruptcy Rule 219(d). A. 24.
Judge Lesser noted his authority to withhold compensation entirely, A. 25-26, but chose to limit the sanctions against the firms. He directed the Arutt firm to return to Futuronics the $60,000 in unauthorized fees received from the Israel firm and to reduce the “reasonable compensation” that otherwise would be allowed to the Israel firm by approximately $190,000.[11] The Israel firm was allowed $850,000 in fees (which included a $200,000 “bonus”) less the $218,380 already paid, or $631,620. The Arutt firm was allowed $36,635 as compensation for 470 hours of professional services performed on behalf of Futuronics, less the $10,000 retainer already paid, or $26,635. A. 27-32.
The parties appealed to the district court pursuant to § 39(c) of the Act, 11 U.S.C. § 67(c) (1976). Judge Duffy affirmed the bankruptcy court’s decision to the extent that it denied compensation to the Israel and Arutt firms but reversed insofar as the order granted either of the firms any compensation. He determined that the bankruptcy court had abused its discretion in allowing any fees to the law firms in view of the serious nature of the attorneys’ misconduct.
Judge Duffy noted that the Israel and Arutt firms had engaged in “a fee splitting arrangement in flagrant disregard of the Bankruptcy Rules”; had “intentionally kept the court in the dark about this arrangement for four years despite the numerous opportunities” to disclose the agreement; and had only revealed the illicit agreement after the court had requested a statement of services. Dist. Ct. op. at 25. He opined that had the bankruptcy court not requested the statement of services and had instead deferred to the contingency fee provisions contained in Judge Herzog’s March 11 order, “the parties would never have revealed the fee splitting arrangement.” Id. at 26. Judge Duffy additionally noted that “once faced with this serious situation, both firms pled ignorance of the Bankruptcy Rules and attempted to place the blame” upon the debtor. Judge Duffy decided that the record belied the law firms’ contentions of ignorance.
The district court concluded that the conduct of the two law firms “was totally unprofessional and in breach of their respective duties as fiduciaries and officers of the court.” Id. Judge Duffy stated that “the conduct of both firms evinces ‘a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in ... a bankruptcy [proceeding].’ ” Id. (quoting In re Arlan’s Department Stores, Inc., 615 F.2d 925, 943 (2d Cir. 1979)). The district court concluded that under the circumstances of the case, “a Judge would indeed be remiss if he were to permit a law firm guilty of such conduct to be compensated.” Id.
DISCUSSION

The Rule 215 Violations

Bankruptcy Rule 215, as made applicable to Chapter XI proceedings by Rule *469 11-22, provides that no attorney shall be employed by the debtor except upon order of the bankruptcy court, and mandates that prospective counsel disclose all of his “connections with the [debtor], the creditors, or any other party in interest, and their respective attorneys and accountants.” In In re Rogers-Pyatt Shellac Co., 51 F.2d 988, 992 (2d Cir. 1931), this Court stated that lawyers “who seek appointment as counsel for an officer of the court owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment. ... If the rule is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally.” Indeed, it has long been the practice in this Circuit to deny compensation to counsel who fail to comply with the disclosure provisions contained in Rule 215 (superseding General Order 44). See In re Arlan’s Department Stores, Inc., supra; In re Progress Lektro Shave Corp., 117 F.2d 602 (2d Cir. 1941); In re Rogers-Pyatt Shellac Co., supra; In re H. L. Stratton, Inc., 51 F.2d 984 (2d Cir. 1931), cert. denied, 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576 (1932); In re Eureka Upholstering Co., 48 F.2d 95 (2d Cir. 1931). In Eureka, this Court held that a technical noncompliance with these disclosure requirements warranted a total denial of compensation. While this rigorous interpretation of the rule was somewhat relaxed in Connelly v. Hancock, Dorr, Ryan & Shove, 195 F.2d 864 (2d Cir. 1952), in that case the relevant facts were “generally disclosed to the judge” and the record indicated that “the facts were known by the judge at the time of appointment.” 195 F.2d at 868. In the case at bar, however, the bankruptcy court was not informed of the retainer agreement between the Arutt and Israel firms until four years after the entry of the order approving the Israel firm’s retention. From the beginning, a cloud hung over the appointment of the Israel firm. Rule 215 expressly required the Israel firm to disclose all “connections” it had with the attorneys for the debtor. This it failed to do. With respect to the Arutt firm, although the firm was appointed pursuant to Rule 215 by the bankruptcy court in January 1975 to act as general counsel, the firm never received the required court approval to perform any of the work in the government contract litigation. Indeed, the Arutt firm exhibited a total and callous disregard for the disclosure requirements of Rule 215 by actually submitting the Israel firm’s application without disclosing its arrangement with the latter.

The Rule 219 Violations

The law firms not only violated the mandatory disclosure provisions contained in Rule 215, but also directly violated the statutory proscription in Rule 219 against fee-splitting arrangements. Judge Lesser determined that the Israel firm “shared $60,-000 of its compensation with the Arutt firm. The former was the ‘sharor’, the latter was the ‘sharee’.” A. 23. He concluded that the agreement violated Bankruptcy Rule 219(d). We believe that the record amply supports the finding of the bankruptcy court that the clandestine agreement entered into between the Arutt and Israel firms in March 1975 constituted an unlawful fee-splitting arrangement in violation of Rule 219.
Rule 219(a), as made applicable to Chapter XI proceedings by Rule 11-31, requires attorneys seeking compensation from the court to disclose “whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered ... in connec-tion with the case .... ” Subdivision (d) of the rule constitutes an outright prohibition of the type of arrangement entered into between the Arutt and Israel firms and further provides that “[i]f a person violates this subdivision, the court may deny him compensation, may hold invalid any transaction subject to examination under Rule 220 to which he is a party, or may enter such other order as may be appropriate.”[12]
*470 The Arutt and Israel firms’ violations of subdivisions (a) and (d) of Rule 219 provide an independent basis for denying compensation. Fee-splitting arrangements have long been acknowledged as anathematic enterprises because of their natural tendency to cause an attorney to inflate his fees in order to offset the diminution in compensation caused by the agreement. See Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929); Albers v. Dickinson, 127 F.2d 957 (8th Cir. 1942); Gochenour v. Cleveland Terminals Building Co., 142 F.2d 991 (6th Cir.), cert. denied, 323 U.S. 767, 65 S.Ct. 120, 89 L.Ed. 614 (1944); In re Consolidated Factors Corp., 59 F.2d 193 (2d Cir. 1932). See generally 12 Collier, supra, at 2-203 to 2-221. Moreover, they “also subject[] the officer or attorney sharing fees to outside influences and may result in a transfer of control to persons who, at best, have a distinctly lesser degree of public responsibilities.” 12 Collier, supra, H 219.07 at 2-220.
Section 62(d) of the Act, 11 U.S.C. § 102(d) (1976), formerly mandated that if an attorney “has, in any form or guise, shared or agreed to share his compensation or in the compensation of any other person contrary to the provisions of subdivision (c) of this section, the court shall withhold all compensation from such petitioner.” (Emphasis supplied.) Although Rule 219(d), which supersedes the latter provision, now casts the sanction for violation of the prohibition in discretionary terms (i. e., “the court may deny him compensation”), the principal purpose for the revision of the Rule was not to dilute its underlying policy but to make available additional discretionary sanctions such as removal from office or dismissal from employment. See Advisory Committee Note to Rule 219; 12 Collier, supra, at 2-221. In any event, we are convinced that the violation of the bankruptcy rules’ prohibition against illicit fee-sharing involved in this case warranted no less than a total denial of compensation. The Breaches of Fiduciary Obligations Owed to the Bankruptcy Court
We emphasized in Arlan’s that the duty of counsel for the debtor in a bankruptcy proceeding to disclose fully to the court all connections that may exist between counsel and the debtor, the creditors, any party in interest, and their respective attorneys arises not solely by reason of the bankruptcy rules, but also is founded upon “the fiduciary obligation owed by counsel for the debtor to the bankruptcy court.” 615 F.2d at 937; accord, In re The Bohack Corp., 607 F.2d 258 (2d Cir. 1979). See generally Brown v. Gerdes, 321 U.S. 178, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944); Woods v. City Bank Co., 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); Finn v. Childs Co., 181 F.2d 431, 441 (2d Cir. 1950).
Both the Arutt firm and the Israel firm flagrantly breached their fiduciary obligations to the bankruptcy court. This is not a case of technical noncompliance as the parties would have us characterize their conduct; rather, as Judge Lesser determined below, “[t]he entire process pertaining to the [appointment of the Israel firm under] the March 11, 1975 order either was calculated to deceive Judge Herzog or was rife with deficiencies which undercut its very existence.” A. 18. The record clearly establishes that the proposed order submitted to Judge Herzog in March 1975 contained a false statement to the effect that no prior application for the relief sought had been made, when, in fact, such an application had been made and had been rejected because it had embraced an apparent fee-splitting arrangement between the Arutt and Israel firms. Within one month of Judge Herzog’s refusal to approve the retention of the Israel firm in the face of the apparent fee-splitting arrangement with the Arutt firm, the appellants deviously deleted the unseemly portions from their application, covertly agreed to maintain their agreement in any event, and resubmitted their proposed order devoid of any reference to their prior attempt or their continued illicit contract. Moreover, it is undisputed that, without the requisite au *471 thorization of the court, the Israel firm paid and the Arutt firm received approximately $60,000 in fees pursuant to the undisclosed retainer agreement entered into between the parties. Despite numerous opportunities to disclose the arrangement early in the proceeding to Judge Lesser, the parties chose surreptitiously to continue their fee-splitting arrangement. Their lack of fidelity was manifested time and again before the court, on each occasion compounding the gravity of their transgression. We find outrageous the Arutt and Israel firms’ failure to disclose their retainer agreement on the occasion described by Judge Lesser, A. 14 — 15, in which they importuned the bankruptcy court for an interim advance, stated that the Israel firm was suffering financial hardship, but nevertheless neglected to inform the court that approximately one-third of the advances already paid to the Israel firm had been handed over to the Arutt firm. Not until Judge Lesser refused to execute proposed compensation orders and requested submissions from the parties in compliance with Rule 219 did the unlawful fee-sharing arrangement come to light. The nadir was finally reached when, upon the revelation of their scheme, they cavalierly professed ignorance of the bankruptcy rules and characterized their actions as amounting to “technical breaches” at best.

The Sanctions

In Arlan’s, an action strikingly similar to the case at bar, this Court held that a district court’s determination that violations of Bankruptcy Rule 215 and breaches of fiduciary obligations by the general counsel and special counsel for the debtor-in-possession in a Chapter XI proceeding constituted sufficient grounds to warrant a total denial of compensation to the misfeasors. The appellants attempt to distinguish the Ar-lan’s case on the ground that there the Chapter XI proceeding was a dismal failure, whereas in the case at bar, the bankruptcy proceeding was a great success. The appellants argue that none of the evils that otherwise might be attributable to fee-sharing or their other acts manifested themselves here and that, therefore, the illicit conduct of the law firms should be excused. But it is well settled that “such agreements are not less reprehensible because in a particular case they may not have resulted in any clearly discernible harm to the estate or its creditors. It is the potential danger alone that makes them obnoxious.” 3A Collier, supra, 162.37 at 1636 (emphasis in original). Additionally, Judge Carter did not decide whether the challenged agreement in the Arlan's case constituted an illicit fee-sharing agreement, but held that in any event the “totality of Ballon’s failure of full disclosure [left] no other recourse” but to deny compensation. 462 F.Supp. 1255 at 1265. Thus, unlike the case at bar, the lower court in Arlan’s did not make an explicit finding that the law firms seeking compensation had engaged in a clandestine fee-splitting arrangement in direct violation of Rule 219. Yet, this Court found that the total denial of compensation to the attorneys in that case was “appropriate.” 615 F.2d at 944.
We conclude that Judge Duffy correctly ruled that Judge Lesser abused his discretion in awarding any compensation to the attorneys in this case. As in Arlan’s, “We deal in this case not with isolated instances of oversight but with a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in these bankruptcy proceedings.” 615 F.2d at 943. We agree with his holding “that given the conduct involved herein . .. the only appropriate sanction to be imposed” is to deny all compensation. Dist.Ct. op. at 30 n.3. Whatever discretion a bankruptcy court judge may have to fashion an appropriate sanction for an attorney’s violation of the bankruptcy rules and breaches of his fiduciary obligations to the court, given the egregiousness of the conduct here, it was an abuse of that discretion to permit the appellants to retain any of the fees they had received, let alone to allow any further compensation.[13]
Affirmed.

. At the time of the Israel firm’s appointment, Mr. Raley was an associate of Mr. Israel. Subsequently Mr. Raley became a partner in the two-man firm.

. Rule 215 provides in pertinent part:
(a) Conditions of Employment of Attorneys and Accountants
No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the. professional services he is to render, and to the best of the applicant’s knowledge all of the *465 attorney’s or accountant’s connections with the bankrupt, the creditors or any other party in interest, and their respective attorneys and accountants. If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. Notwithstanding the foregoing sentence, the court may authorize the employment of an attorney or accountant who has been employed by the bankrupt when such employment is in the best interest of the estate. The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.
(b) Employment of Attorney or Accountant with Adverse Interest
If without disclosure any attorney or accountant employed by the trustee or receiver shall represent or hold, or shall have represented or held, any interest adverse to the estate in any matter upon which he is so employed, the court may deny the allowance of any compensation to such attorney or accountant, or the reimbursement of his expenses, or both, arid may also deny any allowance to the trustee or receiver if it shall appear that he failed to make diligent inquiry into the connections of such attorney or accountant.
(f) Services Rendered by Member or Associate of Firm of Attorneys or Accountants
If, under this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed on behalf of a professional partnership or corporation, any member or regular associate of the firm may act for the attorney or accountant so employed, without further order of the court, and his services may be compensated as services of the attorney or accountant in accordance with Rule 219.

. See note 3 on page 465.
*465 3. Rule 219 provides in pertinent part:
(a) Application for Compensation or Reimbursement
A person seeking compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf.
(b) Disclosure of Compensation Paid or Promised to Attorney for Bankrupt
Every attorney for a bankrupt, whether or not he applies for compensation, shall file with the court on or before the first date set for the first meeting of creditors, or at such other time as the court may direct, a statement setting forth the compensation paid or promised him for the services rendered or to be rendered in connection with the case, the source of the compensation so paid or promised, and whether the attorney has shared or agreed to share such compensation with any other person. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of his compensation with a member or regular associate of his law firm shall not be required.
(d) Restriction on Sharing of Compensation
Except as herein provided, a person rendering services in a bankruptcy case or in connection with such a case shall not in any form or guise share or agree to share the compensation paid or allowed him from the estate for such services with any other person, nor shall he share or agree to share in the compensation of any other person rendering services in a case under the Act or in connection with such a case. This rule does not prohibit an attorney or accountant from sharing his compensation as trustee, receiver, attorney, or accountant with a member or regular associate of his firm, or from sharing in the compensation received by his firm or by any other member or regular associate thereof, and does not prohibit an attorney for a bankrupt or for a petitioning creditor from sharing his compensation for services rendered with any other attorney contributing thereto. If a person violates this subdivision, the court may deny him compensation, may hold invalid any transaction subject to examination under Rule 220 to which he is a party, or may enter such other order as may be appropriate.

. Additionally, Futuronics cross-appeals from the judgments entered against the appellants, contending that they failed to award pre-judgment interest, failed to hold the law firms jointly and severally liable for the approximately $60,000 in unauthorized payments made by the Israel firm to the Arutt firm, failed to hold a professional corporation formed by members of the Arutt firm liable as a successor-in-interest, and failed to hold Fred Israel individually liable for the liability of the Israel firm. We find no merit in the foregoing contentions. While we agree that Judge Lesser abused his discretion in awarding the appellants any compensation, we find no such error in connection with the judgments entered.

. Since the petition was filed prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 et seq. (Supp. Ill 1979), the Bankruptcy Act of 1898 as amended, 11 U.S.C. § 1 et seq. (1976), applies in this case.

. There is confusion in the record as to whether the order was entered on March 10 or 11. Since the parties and courts below have consistently referred to the “March 11 order,” we have also done so to avoid confusion.

. Bankruptcy Rule 1 l-24(a)(7) requires that all creditors or the creditors committee be given a ten-day notice of a hearing on an application for allowances by an attorney. Judge Lesser determined that Judge Herzog must have left the fee provisions undisturbed through an oversight. A. 16-17.

. The Arutt firm was replaced in September 1977 by Schwartz & Sachs, P.C., a firm composed of former members of the Arutt firm. In October 1978, Futuronics retained a different firm, Finley, Kumble, Heine & Underberg (the Finley firm), which had no connection to its predecessors.

. Additionally, the affidavit of Mr. Israel which was submitted with the proposed February order stated: “Based on the services agreed to be rendered by [the Arutt firm], we have agreed to distribute fees received by us on a basis of two-thirds to ourselves and one-third to [the Arutt firm].” A. 12.

. Advance payments continued up until October 1978. The payments made to the Israel firm totalled $218,380.

. Judge Lesser determined that he was not bound by the compensation provisions contained in Judge Herzog’s March 11 order, citing In re Texlon Corp., 596 F.2d 1092 (2d Cir. 1979). A. 35. We need not address that issue in light of our decision to uphold the total denial of compensation in this case.

. Rule 219 restated the long-standing prohibition against illicit fee-sharing arrangements. The rule also eliminated the exemption concerning forwarding fees formerly countenanced *470 under section 62 of the Act. The latter change was made so that the rule comported with Canon 34 of the Canons of Professional Ethics and Disciplinary Rule 2-107 of the Code of Professional Responsibility. See Advisory Committee Note to Rule 219; 12 Collier, supra, UK 219.01 to 219.03.

. In light of our holding, we find it unnecessary to review the correctness of Judge Lesser’s compensation formula.