In re WINSTAR COMMUNICATIONS, INC., et al., Debtors.

Nos. 01–1430 (KJC) to 01–1462(KJC).

United States Bankruptcy Court, D. Delaware.

Dec. 4, 2007.

Christopher A. Ward, The Bayard Firm, Wilmington, DE, David C. Albalah, Bracewell & Giuliani LLP, New York, NY, Edward J. Kosmowski, Edwin J. Harron, M. Blake Cleary, Pauline K. Morgan, Young, Conaway, Stargatt & Taylor, Michael R. Lastowski, William K. Harrington, Duane Morris LLP, Wilmington, DE, Michael G. Menkowitz, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, Sheldon K. Rennie, Fox Rothschild LLP, Wilmington, DE, for Debtor.

Jonathan M. Stemerman, Cozen O'Connor, Philadelphia, PA, L. Jason Cornell, Fox Rothschild LLP, Wilmington, DE, Magdalena Schardt, Fox Rothschild O'Brien & Frankel LLP, Philadelphia, PA, Raymond Howard Lemisch, Benesch Friedlander Coplan & Aronoff, LLP, Wilmington, DE, Raymond Howard Lemisch, Adelman Lavine Gold and Levin, PC, Wilmington, DE, Sheldon K. Rennie, Fox Rothschild LLP, Wilmington, DE, Sheldon K. Rennie, Fox Rothschild, Wilmington, DE, for Trustee.

## MEMORANDUM [1]

KEVIN J. CAREY, Bankruptcy Judge.

The matter before the Court is the Motion of Herrick Feinstein LLP ("Herrick") and Impala Partners, LLC ("Impala") For Authority to Enter Into Agreement" (docket no. 4741)(the "Motion"). The Motion asks for court approval of a "hedging transaction" with Credit Suisse Loan Funding LLC ("CS") regarding a portion of Herrick's and Impala's anticipated contingency fees. The United States Trustee (the "UST") has objected. For the reasons set forth below, the Motion will be denied, without prejudice.

## BACKGROUND

On April 18, 2001, Winstar Communications, Inc. and Winstar Wireless, Inc. (the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). On January 24, 2002, the Court entered an order converting the chapter 11 cases to chapter 7 cases. Christine C. Schubert was appointed as Chapter 7 Trustee ("Trustee") of these cases on January 28, 2002.

The Trustee engaged Herrick as special litigation counsel as of July 1, 2002 to represent the Trustee in a pending adversary proceeding (the "Lucent Adversary Proceeding") against Lucent Technologies, Inc. ("Lucent").[2] By Order dated March 18, 2003 (docket no. 3222), the Court modified Herrick's fee arrangement as special counsel for the Trustee, and authorized the Trustee's employment of Impala as a special litigation consultant. Under the terms of its retention, Herrick was entitled to receive a modified contingency fee for its services rendered through entry of judgment in the Lucent Adversary Proceeding.

---

**1.** This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (M).

**2.** *Winstar Wireless, Inc. et al. v. Lucent Technologoes, Inc., et al.,* Adv. No. 01–01063–KJC.

Impala was also entitled to receive a contingency fee in the Lucent Adversary Proceeding.

After extensive pre-trial proceedings and a 21–day trial over a three-month period, the Bankruptcy Court entered judgment in the Lucent Adversary Proceeding on December 28, 2005 (docket no. 373) in favor of the Trustee for approximately $300,000,000.[3] Lucent posted a bond and took an appeal to the District Court, which affirmed the decision of the Bankruptcy Court (docket nos. 400, 401). The matter has since been appealed to the Court of Appeals for the Third Circuit (docket no. 404).

On April 7, 2007, Herrick and Impala filed the Motion, which seeks the Court's permission to assign part of their anticipated contingency fees to CS (the "Agreement"). The Agreement requires that CS pay Herrick and Impala an undisclosed fixed price (the "Purchase Price"), regardless of the amount of contingency fees awarded. In exchange, Herrick and Impala agree to pay CS the actual amount of contingency fees awarded, up to $10,000,000. If the actual fees are less than $10,000,000, Herrick and Impala would keep the Purchase Price and pay CS what fees, if any, the Court awards. If the actual fees awarded exceed $10,000,000, Herrick and Impala would share the fees in excess of $10,000,000 in accordance with their respective, court-approved retention agreements. The Motion describes "this proposed transaction [as] simply a risk mitigating hedge involving trade claims." Motion, ¶ 16. To assure the Chapter 7 Trustee that the Agreement will not affect Herrick's and Impala's loyalty, the Agree-

ment includes a provision stating that CS has no right to object to the Trustee's settlement or other disposition of the Lucent Adversary Proceeding. The assignment does not become "operative" until final court approval of the Herrick and Impala contingency fees.

On May 11, 2007, the UST filed an Objection to the Motion, claiming the Agreement violates the Bankruptcy Code's prohibition of fee sharing.

## DISCUSSION

The Bankruptcy Code prohibits the sharing of compensation under nearly all circumstances. Section 504 provides that "a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share (1) any such compensation or reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. § 504. Bankruptcy Code § 504 "provides only two exceptions: partners or associates in the same professional association, partnership, or corporation may share compensation, *inter se;* and attorneys for petitioning creditors that join in a petition commencing an involuntary case may share compensation." H.R.Rep. No. 95–595 at 356 (1977); S.Rep. No. 95–989 at 67 (1978), U.S.Code Cong. & Admin.News 1977, pp. 5963, 6311–12, 5787, 5853; 11 U.S.C. § 504(b). "Accordingly, fee sharing among attorneys is generally prohibited under the Bankruptcy Code unless the relationship between the attorneys falls within one of the narrow exceptions." *In re Greer,* 271 B.R. 426, 430 (Bankr. D.Mass.2002) (holding that a fee-sharing

**3.** This decision was rendered by my predecessor, The Honorable Joel B. Rosenthal, a visit- ing judge who served this District.

agreement in which one attorney paid another $50 for each creditors' meeting the other attorney attended on her behalf violated § 504).

Although many states, including Delaware,[4] allow the sharing of fees under certain circumstances, the Bankruptcy Code is more restrictive. My colleague, Chief Judge Walrath, discussed the prohibition in *In re Worldwide Direct, Inc.*, 316 B.R. 637 (Bankr.D.Del.2004):

> Whenever fees or other compensation are shared among two or more professionals, there is incentive to adjust upward the compensation sought in order to offset any diminution to one's own share. Consequently, sharing of compensation can inflate the cost of a bankruptcy case to the debtor and therefore to the creditors.... The potential for harm makes such arrangements reprehensible as a matter of public policy as well as a violation of the attorney's ethical obligations.

*Worldwide*, 316 B.R. at 649, quoting *In re Peterson*, 2004 WL 1895201 at *4 (Bankr.D.Idaho 2004).

The purpose of § 504 also has been described as the preservation of "the integrity of the bankruptcy process so that the professionals engaged in bankruptcy cases attend to their duty as officers of the bankruptcy court, rather than treat their interest in bankruptcy cases as 'matters of traffic [i.e., matters of trade or commerce].' " 4–504 *Collier on Bankruptcy*, P. 504.02[1] at 504–5 (Alan N. Resnick & Henry J. Sommer, eds. 15th Edition Revised 2007) citing *Matter of Arlan's Department Stores, Inc.*, 615 F.2d 925, 943–44 (2d Cir.1979).

■ Moreover, fee sharing is prohibited in bankruptcy proceedings because fee sharing "subjects the professional to outside influences over which the court has no control, which tends to transfer from the court some degree of power over expenditure and allowances." 4–504 *Collier on Bankruptcy* P. 504.01 citing *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 470 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

■ These policies indicate that the statute was promulgated to prevent certain forms of fee sharing agreements that undermine the integrity of the bankruptcy proceeding, most commonly involving the sharing of compensation between two parties when one party is given a referral fee, or when one party appointed by the court hires another party to work on the case without court approval. *See In re Hepner*, 2007 WL 161003 at *2 (Bankr.S.D.Tex. 2007); *In re Greer*, 271 B.R. 426; *Futuronics Corp.*, 655 F.2d 463.

■ Herrick and Impala assert that the Agreement does not violate § 504 because the Agreement is consistent with the policies § 504 was promulgated to advance. First, there is no incentive to inflate fees because the fees have already been earned. The parties have agreed that compensation associated with the appeal will be calculated separately from the fees earned in the Lucent Adversary Proceeding. Second, Herrick and Impala contend that undue influence is not a factor because CS specifically agreed that it has no right to object to any settlement.

The UST points out that the Agreement is not an outright assignment of Herrick's and Impala's professional fees. Under the Agreement, CS would not pay the undis-

---

4. Del. Lawyers' Rules of Prof'l Conduct, R. 1.5(e) (2007).

closed Purchase Price immediately. Nor would Herrick and Impala immediately assign their anticipated contingency fees to CS. Instead, the Purchase Price is to be paid only when the bankruptcy court has entered an order approving payment of such fees, payment of such approved fees to Herrick and Impala is actually received by them, and Herrick and Impala have delivered to CS the lesser of the approved fees or the first $10 million of such fees.

Herrick and Impala reply that the Agreement is structured to provide for the legitimate assignment and purchase of what will be—at the time the Agreement becomes operative—a claim consisting of earned fees. Herrick and Impala also argue that the Agreement provides for payment of the Purchase Price if, ultimately, there is no final judgment in favor of Winstar and, consequently, no fees awarded. Hence, this possible outcome cannot result in any fee sharing, since there would be no fees to "share."

The UST asserts that § 504 prohibits Herrick's and Impala's sale of a share of their contingency fee compensation to CS, describing this treatment of their interest as a "matter of traffic." Herrick and Impala respond that the UST's objection is "a knee-jerk reaction ... to a novel and unfamiliar financing transaction." Reply, ¶ 10. This, they say, is not a transaction in "the making of a market in the bankruptcy process for legal referrals and thereby trafficking in bankruptcy representations." *Id.*

█ In construing § 504, the analysis must begin with the text of the statute. "[I]f the statutory language is unambiguous and the statutory scheme is coherent and consistent ...," the inquiry must end

there. *Baroda Hill Investments v. Telegroup, Inc. (In re Telegroup, Inc.),* 281 F.3d 133, 137 (3d Cir.2002), *quoting, Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Here, the question to be asked simply is: does the Agreement propose "sharing" of fees within the meaning of § 504?

Merriam–Webster OnLine defines the transitive verb "share," as it pertains here, as 1) "to divide and distribute in shares: apportion ... 3) to grant or give a share in...." *See* Merriam–Webster Online *available at* http://www.merriam-webster.com. The Agreement, by its terms, indisputably "apportions" any award of fees to Herrick and Impala with CS. Moreover, the Agreement provides that Herrick and Impala will "grant or give [to CS] a share in" any contingency fees awarded. In this context, I cannot conclude that there is any ambiguity about whether this proposed transaction falls within the prohibition of Bankruptcy Code § 504.

I do not necessarily disagree with Herrick and Impala that the proposed transaction does not appear to offend the policy considerations underlying § 504. Nor do I think estate professionals should be discouraged from developing creative methods to attract and support law firms that undertake complex and expensive litigation on behalf of a debtor's estate or to provide the " 'downside' protection normally available in the market place via insurance or hedges in comparable economic situations." Reply, ¶ 10. But in the absence of ambiguity in the statute, I must apply it as written.

The Motion will be denied, without prejudice.[5]

### *ORDER*

**AND NOW,** this 4th day of December, 2007, upon consideration of the Motion of

---

**5.** I deny the Motion without prejudice because the parties may very well be able to

Herrick Feinstein LLP and Impala Partners, LLC to Enter Into an Agreement (Docket No. 4741)("Motion"), the Objection of the United States Trustee thereto (Docket No. 4745)("Objection"), after a hearing thereon, and for the reasons set forth in the accompanying Memorandum, it is hereby

**ORDERED** and **DECREED** that the Objection is **SUSTAINED** and the Motion **DENIED,** without prejudice.

structure a transaction that does not run afoul of the § 504 prohibition. I leave such an exercise to the creative efforts of the parties and their advisors.